## 75815. WINKFIELD v. THE STATE.
(367 SE2d 283)

POPE, Judge.

Defendant Garcia Winkfield was convicted for trafficking in cocaine and possession of cocaine with intent to distribute. Defendant Winkfield was indicted jointly with Bobby Harold Dansby, who pled guilty to these offenses. The evidence considered in the light most favorable to the prosecution shows Dansby sold cocaine to undercover agents on several occasions in December 1986 in Atlanta. On December 11, Dansby asked the agents to take him to a phone so he could call his "source" to supply him with more cocaine to sell to them. He had in his possession a note pad containing the notation "Wink" and a seven digit number. At the public telephone, Dansby made a call and then waited for the telephone to ring back. Dansby then asked the agents to drive him to a Majik Market store on Camp Creek Parkway. There, Dansby used the telephone again and a short time later an automobile arrived. Dansby obtained a package from an unidentified person in the automobile which he then sold to the agents as cocaine. On December 16 the agents went to Dansby's house to make another purchase. Dansby told the agents he would have to get his "source" and arranged to meet the agents later at West End Mall. Eventually, Dansby drove up in an automobile with defendant Winkfield as a passenger in the front seat. Dansby was arrested in the agents' automobile as he attempted to make a sale of over twenty-eight grams of cocaine and defendant Winkfield was simultaneously arrested by other officers who were staked out at the location. At the time of arrest, a handgun and another bag containing cocaine were found underneath the car seat and between the feet of defendant Winkfield. Winkfield also had in his possession a telephone beeper

assigned by the telephone company to the same number one of the undercover agents had seen written on Dansby's note pad on December 11. Shortly after Winkfield's arrest, his two brothers were arrested outside the home of Bobby Harold Dansby. They explained their presence at Dansby's house by stating defendant Winkfield had dropped them off "at the store" and went off with one they referred to as "Doc," whom they also referred to as the resident of the house at which they were arrested.

Dansby testified and admitted he ran a "drug house" out of his residence. The State produced a witness who testified he had worked for Dansby as an errand runner and doorman. This witness testified defendant Winkfield visited Dansby on numerous occasions carrying a bag. Prior to these visits, he would hear Dansby state that he was out of drugs to sell. After Winkfield arrived and met with Dansby for ten to fifteen minutes in a closed room, Dansby would again have a supply of drugs to sell.

1. Defendant's first two enumerations of error raise the issue of the sufficiency of the evidence to sustain the guilty verdict. The only evidence presented by the defendant was the testimony of Dansby, who took the entire "rap" for the offense. Dansby denied obtaining drugs from the defendant and identified another individual as his source. Dansby testified he ran into defendant by chance on his way to West End Mall to meet the undercover agents for the sale. Winkfield asked Dansby about money owed him for work done on Dansby's automobile. When Winkfield told Dansby he needed the money because his car was broken down, Dansby offered him a ride. According to Dansby, Winkfield was simply waiting for him in his automobile while he made the transaction with the undercover agents.

Defendant argues that his presence at the scene of the drug deal and the presence of the additional cocaine in the car in which he was waiting are insufficient to support his conviction. However, defendant ignores the fact that his mere presence at the scene was not the only inculpatory evidence presented by the prosecution. The task of an appellate court is not to weigh the evidence but to consider all the evidence in the light most favorable to the prosecution. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). This includes the assumption that the jury did not believe the exculpatory testimony. *Cosby v. Jones*, 682 F2d 1373, 1382 (11th Cir. 1982). The remaining inculpatory evidence must then be sufficient to allow a reasonable juror to find the defendant guilty beyond a reasonable doubt. In *Cosby*, the defendant's mere possession of stolen goods was not sufficient to support his conviction of burglary. Here, however, the testimony of Dansby's doorman, together with all other circumstantial evidence presented in this case, would permit a juror to find the defendant guilty beyond a reasonable doubt.

2. Defendant's remaining enumerations of error concern the response of one of the jurors as the jury was polled. Before the polling of the jury commenced, the jury foreman asked the court if the polling could be done in private. The judge informed him that the polling could not be done privately. In response to the question, "Is this your verdict on [the two indictments]?" each juror answered affirmatively. In response to the question, "Was this your verdict in the jury room?" one juror answered, "Yes and no." Yet, in response to the very next question, "Is this now your verdict?" that juror again answered in the affirmative. The trial judge explained to the juror that the purpose of polling the jury is to guarantee the verdict is unanimous, as required by law. The judge further stated that if the verdict is not unanimous, "I would respectfully request that you return to the jury room and continue to deliberate." After the explanatory remarks by the judge, the juror was again polled and answered affirmatively to each of the three questions asked. Before dismissing the jury, the record reflects the trial judge held a private conference with the foreman of the jury to confirm whether the verdict was indeed unanimous. Upon returning to the courtroom, the content of the conference between the judge and the jury foreman was discussed on the record. The jury foreman explained: "There was just a concern on the part of the majority of the jurors that their balloting inside the jury room and the fact that we were required to render a unanimous decision be kept confidential." The judge stated that he had explained to the foreman "when the jury is polled you must stand up for your verdict. . . ." The foreman went on to confirm that the verdict was unanimous among all jurors. When considered in the context of the entire record, it is obvious that the statement by the judge that a juror "must stand up" for the verdict was simply an explanation by the judge that a juror must respond in open court to the polling of the jury and cannot keep his vote confidential. Defendant's argument that the judge's comments coerced the jury into arriving at a unanimous verdict is unfounded.

*Judgment affirmed. McMurray, P. J., and Benham, J., concur.*

DECIDED MARCH 16, 1988.

*Murray M. Silver*, for appellant.
*Lewis R. Slaton, District Attorney, Joseph J. Drolet, Alfred D. Dixon, Richard E. Hicks, Assistant District Attorneys*, for appellee.